UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN JOSEPH,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WARDEN, FCI-MENDOTA,<br><br>　　　　　Respondent. | No.  1:25-cv-00800-SKO (HC)<br><br>**ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND GRANT PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 9]** |

　　　　Petitioner is a federal prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He filed the instant petition on July 2, 2025. (Doc. 1.) Petitioner claims the Bureau of Prisons ("BOP") has wrongly determined the commencement of his credit earning ability under the First Step Act ("FSA").  On September 19, 2025, Respondent filed a motion to dismiss the petition and response.  (Doc. 9.)  Respondent contends the petition should be dismissed for failure to exhaust, and alternatively, that the petition should be denied on the merits. Petitioner did not file an opposition/traverse. Upon review of the pleadings, the Court will recommend the motion be DENIED and the petition be GRANTED.

**DISCUSSION**

**I.**　　**Motion to Dismiss**

　　　　The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer.

See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). The Court will review the motion under Rule 4 standards. See Hillery, 533 F. Supp. at 1194 & n. 12.

## II.    Background

On November 27, 2023, Petitioner was sentenced in the United States District Court for the District of Nevada to a term of 120 months imprisonment for his conviction of one count of attempting to coerce a minor to engage in sex acts. See United States v. Joseph, Case No. 3:21-cr-00025-MMD-CSD-1 (D. Nev. 2021.) On December 21, 2023, Petitioner was taken into BOP custody to await transportation to a designated facility for service of his sentence. (Doc. 9-1 at 7, 21, 52.) On January 8, 2024, Petitioner was received at his assigned facility. (Doc. 9-1 at 12, 21.) He has a projected release date of February 23, 2030, via good conduct time allowance. (Doc. 9-1 at 11.)  Per BOP's sentence calculations, Petitioner has accrued 524 program days and determined that Petitioner has earned 170 FSA days to be applied towards prerelease custody and earned zero FSA days to be applied towards early transfer to supervised release. (Doc. 9-1 at 7.)

According to the BOP's records of its Administrative Remedy Program, Petitioner has not submitted an Administrative Remedy Request for the claims presented here.  (Doc. 9-1 at 8.)

## III.    The First Step Act

The First Step Act was enacted on December 21, 2018, and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased

their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," Bottinelli v. Salazar, 929 F.3d 1196, 1198 (9th Cir. 2019), and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

**IV.     Exhaustion**

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

The first step in seeking administrative remedies is a request for informal resolution. 28 C.F.R. § 542.13. When informal resolution procedures fail to achieve sufficient results, the BOP makes available to inmates a formal three-level administrative remedy process: (1) a Request for Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel. 28 C.F.R. §

3

1  542.10 et seq.

2  According to Respondent, Petitioner has never requested relief through the BOP's
3  administrative remedy process concerning the instant claims.  Thus, the claims are unexhausted.
4  Ordinarily, the Court would dismiss the petition as a prudential matter.  See Ward v. Chavez, 678
5  F.3d 1042, 1045 (9th Cir. 2012).  Courts may require exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

9  United States v. Cal. Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983) (citing McGee v. United
10 States, 402 U.S. 479, 484 (1971); McKart v. United States, 395 U.S. 185, 193–95 (1969); Stauffer
11 Chemical Co. v. FDA, 670 F.2d 106, 107 (9th Cir. 1982), *overruled on other grounds by* Albino
12 v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014); Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th
13 Cir. 1978)).  On the other hand, courts, in their discretion, may waive the exhaustion requirement
14 in various situations, including "where administrative remedies are inadequate or not efficacious,
15 pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the
16 administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir.
17 2004) (internal quotation marks and citation omitted).

18  The Court finds that the administrative remedies process is not efficacious in this case
19 and further pursuit would be a futile gesture because, as discussed below, Respondent is mistaken
20 in his understanding of when Petitioner can begin earning credits under 18 U.S.C. §§
21 3585(d)(4)(B) and 3632(a).  Indeed, none of the reasons for requiring exhaustion are present in
22 this case.  First, any agency expertise necessary to generate a proper record and reach a proper
23 decision has been provided in Respondent's filings.  Second, the claim relies on a mistaken
24 interpretation of law.  Finally, administrative review in this case is not likely to allow the agency
25 to correct its own mistakes and preclude the need for judicial review because the Court disagrees
26 with Respondent's reading of the FSA. The Court thus concludes that any further administrative
27 review would not preclude the need for judicial review. The Court recommends excusing
28 Petitioner's failure to exhaust administrative remedies.

**V.     Review of Claims**

    A.     Commencement of credit earning under First Step Act

Petitioner asserts that December 21, 2023 – the date he was taken into BOP custody following sentencing in the Nevada District Court – is the date that should have been used to calculate the commencement of his First Step Act credit earning.  He claims the BOP wrongly considered January 8, 2024 – the date he was eventually received by the designated institution of incarceration – as the start date.  Respondent disagrees and points to 28 C.F.R. § 523.42(a) as authority for using "the date the inmate arrives at the designated Bureau facility where the sentence will be served" as the date of commencement.  The Court finds that § 523.42(a) conflicts with the plain language of 18 U.S.C. §§ 3585(d)(4)(B) and 3632(a).

The BOP is authorized to compute a federal prisoner's sentence under 18 U.S.C. § 3585(b). Allen v. Crabtree, 153 F.3d 1030, 1033 (9th Cir. 1998).  Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  Thus, a sentence to a term of imprisonment commences on either: (1) the date the defendant is received in custody awaiting transportation to the official detention facility at which the sentence is to be served; or (2) the date the defendant arrives voluntarily to commence service of sentence at the official detention facility at which the sentence is to be served.

Respondent contends that a petitioner is not eligible to earn First Step Act credits until he is actually received at the designated Bureau facility.  Respondent cites 28 C.F.R. § 523.42(a), which provides:

> When an eligible inmate begins earning FSA Time Credits. An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

This regulation conflicts with 18 U.S.C. § 3632.

Chapter 5, Part 523 of Title 28 of the Code of Federal Regulations ("C.F.R.") provides regulations on the "Computation of Sentence." Subpart E of Part 523 is titled "First Step Act

5

1  Time Credits." The purpose of Subpart E "is to describe procedures for the earning and
2  application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First
3  Step Act of 2018 (Pub.L. 115–391, December 21, 2018, 132 Stat. 5194) (FSA). . . ." 28 C.F.R. §
4  523.40.  18 U.S.C. § 3632 provides when a prisoner is ineligible for FSA ETCs.  See 18 U.S.C. §
5  3632(d)(4)(B) (providing that a prisoner is ineligible for FSA ETCs before § 3632 was enacted
6  and during official detention before the prisoner's sentence has commenced; 3632(d)(4)(D)
7  (listing certain provisions of law and providing that a prisoner is ineligible for FSA ETCs if
8  serving a sentence for a conviction under any of those provisions of law).

9  "Because this case involves an administrative agency's construction of a statute that it
10 administers, [the Court's] analysis is governed by Chevron U.S.A. Inc. v. Natural Resources
11 Defense Council, Inc., 467 U.S. 837 (1984)." FDA v. Brown & Williamson Tobacco Corp., 529
12 U.S. 120, 132 (2000). "Under the Chevron framework, a reviewing court first determines if
13 Congress has directly spoken to the precise question at issue, in such a way that the intent of
14 Congress is clear." Mujahid v. Daniels, 413 F.3d 991, 997 (9th Cir. 2005) (internal quotations
15 omitted) (quoting Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 (9th Cir. 2001) (quoting
16 Chevron, 467 U.S. at 843 internal quotations and citations omitted)). "If the intent of Congress is
17 clear, that is the end of the matter; for the court, as well as the agency, must give effect to the
18 unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43.

19  Here, Congress has directly spoken to the precise question of when a prisoner is ineligible
20 for FSA ETCs.  In 18 U.S.C. § 3632(d)(4)(B), a prisoner is explicitly barred from earning credits
21 (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence
22 commences under § 3585(a).  As to the commencement of a sentence, Section 3585(a)
23 unambiguously provides that "[a] term of imprisonment commences" when a prisoner is received
24 in custody awaiting transportation to the official detention facility at which the sentence is to be
25 served. 18 U.S.C. § 3585(a).

26  Accordingly, under 18 U.S.C. § 3632(d)(4)(B)(ii), Petitioner's eligibility for FSA time
27 credits commenced on December 21, 2023, the day he was taken into BOP custody to await
28 eventual transportation to the designated detention facility. (Doc. 9-1 at 21.) Because Section

523.42(a) sets a timeline that conflicts with an unambiguous statute, it is not entitled to Chevron deference, and the Court must give effect to the statutory text. Other courts to have addressed this issue have come to the same conclusion. See Yufenyuy v. Warden, FCI Berlin, 2023 WL 2398300, at *4 (D.N.H. 2023) (relying on Chevron to conclude that 28 C.F.R. § 523.42(a) contradicts "the plain language of the FSA, and of § 3585(a), [which] clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits" and that "there is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA"); Huihui v. Derr, 2023 WL 4086073, at *2 (D. Haw. 2023); Patel v. Barron, 2023 WL 6311281, at *5 (W.D. Wash. 2023); Umejesi v. Warden, FCI Berlin, 2023 WL 4101455 (D.N.H. 2023).

The Court concludes that Petitioner should have been afforded an opportunity to earn FSA ETCs toward supervised release from the date he was actually placed in BOP custody, December 21, 2023. Accordingly, Respondent's motion to dismiss should be denied, Petitioner's habeas petition should be granted, and the BOP should be directed to recalculate Petitioner's time credits utilizing December 21, 2023, as the correct start date.

**ORDER**

The Clerk of Court is directed to assign a District Judge to this case.

**RECOMMENDATION**

Accordingly, IT IS HEREBY RECOMMENDED:

1) Respondent's motion to dismiss the petition be DENIED;

2) The petition for writ of habeas corpus be GRANTED; and

3) Respondent be DIRECTED to recalculate Petitioner's sentence using December 21, 2023, as the correct start date on which Petitioner became eligible to earn FSA credits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document

7

should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:  **November 13, 2025**           */s/ Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE